UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| TYRONE R. ATWATER, GLORIA M. ATWATER, STEVEN C. CRABTREE, KIMBERLY A. CRABTREE, SCOTT FARTHING, CHANDA FARTHING, CHARLES HAMEL, JOHN M. HOLDEN, KELLY A. HOLDEN, ALEJANDRO GARCIA JASSO, PATRICIA CARRILLO JASSO, MATTHEW JOHANSEN, BRITTANY JOHANSEN (f/k/a BRITTANY ADDEO), CASEY SEBAHAR, HAILEY SEBAHAR, KRISTINE SWIGART, JERRY VANDENBERG, and NANCY VANDENBERG,<br><br>          Plaintiffs,<br><br>     v.<br><br>THE UNITED STATES OF AMERICA,<br><br>          Defendant. | No. 2:23-cv-01147 WBS AC<br><br>ORDER |

----oo0oo----

Plaintiffs, eighteen property owners from Douglas County, Nevada, assert claims against the United States for negligence (Claim 1), negligence per se (Claim 2), trespass (Claim 3), and failure to warn (Claim 4) based on the United

1

States Forest Service's ("Forest Service") handling of a 2021 wildfire. The United States moves to dismiss for lack of subject-matter jurisdiction. (Mot. (Docket No. 16).)

I. Factual Background

On July 4, 2021, a hiker on the Pacific Crest Trail notified the Carson Ranger District of smoke that he saw rising north of Tamarack Lake, in an area within the Humboldt-Toiyabe National Forest in California. (Compl. (Docket No. 1) ¶¶ 22-23.) The Forest Service sent a helicopter to monitor the fire a few hours later. (Id.)

The next day, on July 5, the Forest Service published the Tamarack Incident Decision, which set forth its initial assessment of and monitoring plan for the Tamarack Fire. (Id. ¶ 27 & Ex. 2 ("Incident Decision").) The Incident Decision explained the Forest Service's choice to monitor the fire, instead of actively suppressing it, as the course of action that best balanced firefighter safety, expenditure of resources, and risk of a bigger fire. (Incident Decision at 20.) Over the next eleven days, the Forest Service monitored the Tamarack Fire via in-person visits, cameras, and aircraft. (Mot. at 5; Stansfield Decl. (Docket No. 16-2) at 4-5.)

On July 10, the Carson Ranger District posted a video of the Tamarack Fire on the Forest's Facebook page, informing the public of the Forest Service's decision to monitor the fire and that the fire posed no present threat to the public. (Hupp Decl. (Docket No. 16-11) ¶ 4 & Facebook Post (Docket No. 16-12).)

On July 16, the Tamarack Fire had grown to the point that the Forest Service began committing air and ground resources

1  to suppress it.  (Compl. ¶ 35; Stansfield Decl. ¶ 17.)  However,
2  the fire quickly grew out of control, growing from 100 acres to
3  more than 10,000 acres within a day.  (Compl. ¶¶ 35-36;
4  Stansfield Decl. 21.)  The fire burned for months and at its peak
5  consumed more than 60,000 acres of land.  (Compl. ¶ 40.)  It also
6  destroyed more than 20 houses and structures, including the real
7  property of the plaintiffs.  (Compl. ¶¶ 11-20, 40.)

II.  Legal Standard

Parties may move to dismiss claims against them for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  An attack on subject matter jurisdiction may be facial or factual.  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the trust of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

Where, as here, the defendant has mounted a factual attack, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  Id. (citing Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).  Disputed facts must be resolved in favor of the plaintiff.  Id.

III. Discussion

The government moves to dismiss plaintiffs' complaint on grounds of sovereign immunity.  "The United States, as sovereign, is immune from suit save as it consents to be sued,

and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941) (citations omitted). Lawsuits against the United States thus must be dismissed for lack of subject matter jurisdiction unless the plaintiff can show that the United States has waived sovereign immunity. United States v. Mitchell, 445 U.S. 535, 538 (1980).

The United States has waived its sovereign immunity against most tort claims pursuant to the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 2671 et seq.; United States v. Orleans, 425 U.S. 807, 813 (1976). However, there are exceptions. Because the government "can be sued only to the extent that it has waived its immunity, due regard must be given to the [FTCA's] exceptions" to the United States's waiver of immunity. Id. at 814.

    A.   Discretionary Function Exception

One such exception is the discretionary function exception, which provides that the United States remains immune from suit under the FTCA when the plaintiff's claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The Supreme Court has set forth a two-part test to determine whether the discretionary function exception is applicable. Berkovitz v. United States, 486 U.S. 531, 536 (1988); United States v. Gaubert, 499 U.S. 315, 322–23 (1991). Courts must first determine whether the challenged actions

1  involve an "element of judgment or choice."  Gaubert, 499 U.S. at
2  322.  If so, courts must then determine "whether that judgment is
3  of the kind that the discretionary function exception was
4  designed to shield," Berkovitz, 486 U.S. at 536.  These are
5  judgments that implicate social, economic, and political policy
6  considerations.  Miller v. United States, 163 F.3d 591, 593 (9th
7  Cir. 1998).  "The challenged decision need not be actually
8  grounded in policy considerations, but must be, by its nature,
9  susceptible to a policy analysis."  Id.
10       The parties do not dispute that the Forest Service's
11 actions satisfy the first step.  (See Opp'n (Docket No. 19) at
12 10.)  Instead, they dispute whether the second step applies here
13 to the Forest Service's (1) fire management, and (2) its alleged
14 failure to warn the public about the Tamarack Fire.
15       1.   Monitoring vs. Firefighting (Claims 1-3)
16       Plaintiffs' first three claims challenge the Forest
17 Service's initial decision to monitor the fire instead of
18 attacking it right away.  However, the Forest Service's
19 deliberations and ultimate choice to monitor involves the kind of
20 exercise of judgment protected by the discretionary function
21 exception.
22       The Ninth Circuit has held repeatedly that decisions on
23 how and whether to fight fires involve the exercise of
24 discretionary judgment if they require balancing competing policy
25 interests and allocating limited resources between competing
26 goals.  See, e.g., Esquivel v. United States, 21 F.4th 565, 576
27 (9th Cir. 2021) ("[D]ecisions regarding whether and how to
28 perform fire suppression operations are discretionary functions

5

1  rooted in policy . . . .") (emphasis added); Miller, 163 F.3d at
2  596 (decision "regarding how to best approach" ongoing fire
3  required balancing safety, cost, damage to resources,
4  environmental impacts, and protection of private property;
5  "[w]here the government is forced, as it was here, to balance
6  competing concerns, immunity shields the decision"); Green v.
7  United States, 630 F.3d 1245, 1251 (9th Cir. 2011) ("[T]he Forest
8  Service's choices in how to fight a fire are 'susceptible to a
9  policy analysis grounded in social, economic, or political
10 concerns.'") (citing Miller, 163 F.3d at 595) (emphasis
11 original).  See also Knezovich v. United States, 82 F.4th 931,
12 938 (10th Cir. 2023) ("The Incident Decision lays out the myriad
13 considerations that led to [the decision to monitor the fire],
14 including safety, terrain, weather, and risk.  Other factors
15 included the difficult terrain where the fire started, and the
16 competing draw of firefighting resources to other nearby fires.
17 Those considerations are quintessentially discretionary."); Evans
18 v. United States, 598 F. Supp. 3d 907, 919–20 (E.D. Cal. 2022)
19 (Thurston, J.) ("[A]ny conduct based on the performance of fire
20 suppression activities and decisions about allocation of these
21 resources implicate policy concerns that courts should not second
22 guess.")

23        Here, the Forest Service clearly faced similar policy
24 considerations before deciding on its strategy to monitor the
25 Tamarack Fire.  While plaintiffs portray the Forest Service's
26 response as complete inaction borne of inertia that ought to be
27 subject to liability (see Opp'n (Docket No. 19) at 11 ("It goes
28 without say [sic] that a decision to do nothing is not the type

of conduct the discretionary function was intend [sic] to protect.")), the Tamarack Incident Decision, published a day after the fire was initially spotted, explains that "Full suppression with direct tactics was considered but ruled out due to the lack of values[1] at risk when compared to the exposure to firefighting resources.  The lack of escape routes and safety zones coupled with unreliable radio communications supported this tactical approach.  [. . .]  The monitor strategy is the alternative with the best balance [between the desired outcome and exposure to responders]."  (Incident Decision at 20.)

The decision to adopt the monitoring strategy exudes policy deliberations that are "quintessentially discretionary," Knezovich, 82 F.4th at 938, and therefore beyond the scrutiny of this court.[2]

Accordingly, the court will dismiss plaintiffs' negligence, negligence per se, and trespass claims.

---

[1] "Fire fighters and public safety are our top values." (Incident Decision at 20.)

[2] Plaintiffs also invoke the "design-implementation" distinction, which provides that "the design of a course of governmental action is shielded by the discretionary function exception, whereas the implementation of that course of action is not."  Whisnant v. United States, 400 F.3d 1177, 1181 (9th Cir. 2005) (emphasis original).  However, as plaintiffs themselves acknowledge, the Ninth Circuit recognizes one exception to the design-implementation distinction:  "The implementation of a government policy is shielded where the implementation itself implicates policy concerns, such as where government officials must consider competing fire-fighter safety and public safety considerations in deciding how to fight a forest fire . . . ."  Id. at 1181 n.3 (citing Miller, 163 F.3d at 595-96) (emphasis original).  And, as explained above, the Forest Service's considered decision to monitor the Tamarack Fire instead of pursuing alternative tactics squarely implicates policy concerns.

7

2. <u>Failure to Warn</u> (Claim 4)

Plaintiffs' failure to warn claim contends that the government "failed to timely and clearly advise Plaintiffs" about the threat posed to them by the Tamarack Fire and consequently deprived them of enough time to take mitigating steps to save their properties. (<u>See</u> Compl. ¶¶ 74-79.) The court now considers whether the Forest Service's communications decisions involved judgment of the kind that the discretionary function exception intends to protect.

While plaintiffs' claim is styled as a failure to warn claim, it appears in fact to take issue with the sufficiency of the Forest Service's communications with the public. Plaintiffs allege that, between July 5 and 15, "the Forest Service never informed the public about its decision to monitor the fire and to not engage in suppression efforts, and of the fact it was receiving information that the fire was burning uncontrollably on its property and threatening to invade private property."[3] (Opp'n at 16-17.) However, the Forest Service did notify the public about the Tamarack Fire on July 10, 2021, via a post on the Humboldt-Toiyabe National Forest's Facebook page. (<u>See</u> Hupp Decl. (Docket No. 16-11) ¶ 4 and Ex. 9; Opp'n at 7, 17.) The Facebook post included a video of the fire, explained that a lightning strike started it, and concluded with the Forest Service's assessment that the fire "poses no threat to the public, infrastructure or resource values." (Hupp Decl. Ex. 9.)

---

[3] Plaintiffs do not appear to challenge the Forest Service's communications decisions outside of the July 5 to July 15 timeframe.

That the Forest Service made a public post alone distinguishes this case from Green v. United States, which plaintiffs argue ought to control. In Green, a Ninth Circuit panel held that the Forest Service's failure to alert private landowners before or after lighting a backfire[4] on their property was not susceptible to policy considerations. The panel so held because no evidence showed that the failure to warn resulted from any resource allocation considerations. See Green, 630 F.3d at 1251-52. Here, in contrast, the Forest Service did make a public communication in the form of the information and video posted on its Facebook page. It is not for the court to second-guess the adequacy of that communication. In this case, the Forest Service therefore has no need to justify any inaction on the basis of resource allocation pursuant to Green.[5]

Further, Green is the only binding case of which the court is aware that found government liability for failure to warn about a wildfire. The two other binding cases addressing failure to warn about wildfires found that challenges to the

---

[4] A "backfire" is a fire set along the inner edge of a fireline to consume the fuel in the path of a wildfire or change the direction of force of the fire's convection column. See https://ask.usda.gov/s/article/What-is-a-backfire-wildfire-suppression-technique.

[5] Kim v. United States, 940 F.3d 484 (9th Cir. 2019) is also distinguishable on the same grounds. (See Opp'n at 18.) In Kim, plaintiffs asserted, in relevant part, a failure to warn claim after a tree limb fell and killed two boys camping on Yosemite National Park campgrounds. The Ninth Circuit panel found that "fulfilling the Park's duty to inform visitors somehow about that risk does not involve considerations of public policy," id. at 492 (emphasis original), and therefore the failure to warn was not protected by the discretionary function exception.

9

Forest Service's method of alerting the public were barred by the discretionary function exception.  In Esquivel v. United States, the Ninth Circuit distinguished Green, holding that the Forest Service's in-person conversation with a landowner about starting a defensive fire on their land was covered by the discretionary function exception because it was "based upon the exercise or performance of choosing how to organize and conduct fire suppression operations, which undisputedly requires the exercise of judgment grounded in social, economic, or political policy." Esquivel, 21 F.4th at 577 (cleaned up).

The Ninth Circuit again distinguished Green in Schurg v. United States, on the ground that the Forest Service's decision to post about a wildfire on a public, online platform and use other technology-based methods to notify landowners about nearby fire-suppression activities instead of reaching out to them directly "was related to its decision about 'whether, where, and how to set and manage' the fire-suppression activities." Schurg, 63 F.4th at 834 (citing Esquivel, 21 F.4th at 576).

The Ninth Circuit has also held in other contexts that how to warn the public about potential dangers is a discretionary call best left to the government. See, e.g., Childers v. United States, 40 F.3d 973, 976 (9th Cir. 1994) ("[D]ecisions as to the precise manner in which NPS would warn the public as to trails which are left open, but unmaintained in the winter, clearly fall within the discretionary function exception.") (emphasis original); Blackburn v. United States, 100 F.3d 1426, 1434 (9th Cir. 1996) ("[T]he NPS in the present case balanced competing policy considerations in determining how to warn the public of

10

1   the hazard.  The NPS determined that the best alternative was to
2   place signs stating "DANGEROUS TO DIVE FROM BRIDGE" on and around
3   the bridge.  This decision is 'precisely the kind the
4   discretionary function exception was intended to immunize from
5   suit.'" (citing Childers, 40 F.3d at 976)); see also Ruffino v.
6   United States, 374 F. Supp. 3d 961, 975 (E.D. Cal. 2019)
7   (Thurston, J.) (even failure to warn of known or knowable hazards
8   shielded if decision was actually susceptible to policy analysis
9   (citing Morales v. United States, 895 F.3d 708, 716 (9th Cir.
10  2018))).

11          Even at face, the Forest Service's decisions regarding
12  the mode, frequency, and content of its notification to the
13  public about the Tamarack Fire are plainly susceptible to policy
14  considerations, as they implicate, among other things, questions
15  about the speed and accuracy of information to be published.
16  (Mot. at 19-20.)  Its decision to make one Facebook post between
17  July 5 and July 15 instead of conducting more proactive outreach
18  by posting more, posting on other public platforms, or contacting
19  vicinity property owners directly about a potential fire threat
20  was also proportionate to its initial, discretionary assessment
21  that "[c]ritical values [i.e., public safety] have a low
22  probability of being impacted . . . . Consequences may include
23  limited impact to infrastructure . . . ."  (Incident Decision at
24  20.)
25          Accordingly, the court will dismiss plaintiffs' failure
26  to warn claim on this basis.[6]

27  ─────────────
        [6]    The government also argues that Claim 4 is
28  independently barred by the misrepresentation exception to the

                                11

B.  Jurisdictional Discovery

Plaintiffs seek leave to depose the declarants whose declarations accompany the government's motion to dismiss "to determine whether their decision-making was truly guided by discretionary, policy-driven considerations, or whether their jurisdictional motion is in fact supported by nothing more than post hoc rationalizations with no actual evidentiary support." (Reply at 19-20.)

However, plaintiffs fail to reckon with a crucial word: "susceptible."  See Miller, 163 F.3d at 593 ("The challenged decision need not be actually grounded in policy considerations, but must be, by its nature, susceptible to a policy analysis.") See also Gonzalez v. United States, 814 F.3d 1022, 1033 (9th Cir. 2016) (government "not required to prove . . . that any decision actually involved the weighing of policy considerations"); Lam v. United States, 979 F.3d 665, 674 (9th Cir. 2020) (courts "must not focus on or even consider the employee's actual thinking about what to do or not do, or the status of the employee, or the 'routine or frequent nature' of the discretionary act.") (citing Gaubert, 499 U.S. at 334).

More generally, plaintiffs fail to raise any factual disputes that bear on the question of jurisdiction.  Accordingly, any jurisdictional discovery would be futile.

C.  No Leave to Amend

---

FTCA's waiver of sovereign immunity.  (See Mot. at 20-21.) Because the court dismisses this claim under the discretionary function exception, it need not consider the applicability of the misrepresentation exception.

12

        Courts commonly consider four factors when deciding whether to grant leave to amend a complaint under Rule 15(a): bad faith, undue delay, prejudice, and futility of amendment. <u>Roth v. Marquez</u>, 942 F.2d 617, 628 (9th Cir. 1991). Because Rule 16(b)'s "good cause" inquiry essentially incorporates the first three factors, if a court finds that good cause exists, it should then deny leave to amend only if such amendment would be futile.

        Here, the court concludes that amendment would be futile. All of the Forest Service's alleged acts of commission and omission are firmly rooted in contexts where its decisions are at least susceptible to policy considerations. The court cannot imagine any plausible additional allegations which might disturb the court's analysis. Accordingly, plaintiffs will not be given leave to amend.

        IT IS THEREFORE ORDERED that the United States's motion to dismiss (Docket No. 16) be, and the same hereby is, GRANTED. Dismissal shall be with prejudice.

Dated: January 23, 2024

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE